Opinion issued
February 10, 2011 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 
 


 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 


 
 

 
 



NO. 01-09-01026-CV

 


 
 

 
 



REDA IBRAHIM, Appellant

 

V.

 

ERNESTINE MATCHETT DIXON, Appellee

 


 
 

 
 
 



On Appeal from the County Court at Law No.
3

Harris County, Texas

Trial Court Cause No. 883,671

 


 
 

 
 
 



MEMORANDUM OPINION

          Appellant, Reda Ibrahim, challenges
the trial court’s rendition of summary judgment in favor of appellee, Ernestine
Matchett Dixon, in Ibrahim’s suit against Dixon for negligence.  In her sole issue, Ibrahim contends that the
trial court erred in granting Dixon summary judgment on the ground that Ibrahim
did not exercise due diligence in serving Dixon after the statute of
limitations had expired.

          We affirm.

Background

           In her petition, filed on January 24, 2007, Ibrahim
alleged that on May 5, 2005, Dixon, while driving her car, negligently struck Ibrahim
as she walked across a private drive.  Ibrahim
served Dixon with her petition on March 21, 2009, approximately twenty-two
months after the expiration of the statute of limitations.  On April 9, 2009, Dixon filed her answer, in
which she asserted the affirmative defense of limitations.  Dixon subsequently filed a summary-judgment
motion, asserting that Ibrahim “did not use diligence in effecting service of
process” and had no explanation for the delay in service.  Dixon attached to her motion her affidavit in
which she testified that she had lived at “3714 Wyoming Street” in Harris
County, Texas since the date of the accident. 
She noted that this address had been correctly identified in the police accident
report.  Dixon further testified that she
had not left the State of Texas, she spent most of her time at her home address
for personal reasons, and no one had attempted to serve her at her home address
until March 21, 2009.  

Dixon also
attached to her summary-judgment motion the three citations that Ibrahim,
through her counsel, had requested in the case. 
The first citation, issued on January 25, 2007, identified Dixon’s service
address as “3719” Wyoming Street, not “3714” Wyoming Street.  The return for the citation revealed that a
deputy, on February 1, 2007, unsuccessfully attempted service of this citation at
3719 Wyoming Street and wrote in his notes on the return “B/A,” indicating that
it was a “bad address,” and “new occupant,” indicating that someone else lived
at the address.  The deputy further wrote
that on February 2, 2007, he had “left [a] message for new address” and, on
March 2, 2007, he returned the citation to court because there was “no address
from attorney to serve.”  The second
citation, issued on May 23, 2007, again identified Dixon’s service address as
3719 Wyoming Street.  The return for the
citation provided that the deputy, on May 29, 2007 and June 4, 2007, unsuccessfully
attempted service on Dixon at 3719 Wyoming Street and wrote on the return that he
notified the attorney regarding the “bad address.”  The deputy, on August 28, 2007, further wrote
on the return, “return to court, no new address from attorney to serve.”  The third citation, issued on September 12,
2007, identified Dixon’s correct service address as 3714 Wyoming Street.  Andrea Hoxie, a process server, served this citation,
but her service affidavit, which was attached to the citation, revealed that
she did not receive the citation and petition until February 2008.  Also, Hoxie served Dixon at her residence on
3714 Wyoming Street approximately thirteen months later, on March 21, 2009.  

Based upon
the citations and evidence, Dixon argued that Ibrahim and her counsel did not
exercise due diligence in serving her because they knew by March 2, 2007 that
3719 Wyoming Street was an incorrect service address for Dixon, Dixon’s correct
address of 3714 Wyoming Street had been disclosed in the police accident report
on the date of the accident, Ibrahim did not obtain the citation with Dixon’s
correct address until September 12, 2007, Ibrahim waited another five months
before sending the new citation to the process server, and the process server
failed to serve Dixon for another thirteen months after receiving the citation.

          In her response to Dixon’s summary-judgment
motion, Ibrahim asserted that Dixon had been “avoiding service,” and, in
support of this assertion, Ibrahim attached the affidavit of Hoxie, who
testified that after receiving the citation, she had made “dozen of attempts”
“at various times of the day” and on “different days of the week” to serve
Dixon at her home on 3714 Wyoming Street. 
Hoxie left her contact information with an occupant at the home and on
the door, but she never received any contact from Dixon.  Hoxie noted that service attempts on Dixon
“became part of [her] weekly routine,” and she believed that Dixon had been
avoiding service.  Hoxie eventually made
personal contact with Dixon at her home on March 21, 2009 and served her with
the citation.    

Ibrahim
also attached the affidavit of her counsel, who testified that because the
police accident report was “almost two years old,” he consulted an online
resource containing driver’s license records, which identified Dixon’s address
as 3719 Wyoming Street, and he requested that the first citation include this
address.  Ibrahim’s counsel further testified
that after the first citation was returned by the deputy in March 2007, he
“investigated further” using additional online resources and determined again
that 3719 Wyoming Street was Dixon’s address. Thus, he requested a second
citation for that same address.  However,
Ibrahim’s counsel also explained that in May 2007, he hired a private
investigator who prepared a report reflecting Dixon’s “residence address” as
3714 Wyoming Street, which was Dixon’s voter registration address.  Ibrahim’s counsel explained that although the
investigator identified Dixon’s home address as 3714 Wyoming Street in this
report, the investigator had also identified seven “previous addresses” for
Dixon, including 3719 Wyoming Street, as well as a spouse’s address and a separate
vehicle registration address.  Ibrahim’s
counsel conceded that he did not “become aware that the second citation,” which
was issued in May 2007 for 3719 Wyoming Street, had been returned for a bad
address until September 2007.   

In
September 2007, Ibrahim’s counsel requested a third citation and used 3714
Wyoming Street as Dixon’s service address. 
Ibrahim’s counsel noted that he had “either picked [the citation] up or
had [it] mailed to [him] later that month.” 
Ibrahim’s counsel “continued attempting to use online resources to
locate which of the several addresses” was Dixon’s correct address.  In January or February 2008, he contacted Hoxie,
the process server, and instructed her to serve the citation “starting [with]
3714 Wyoming” Street and “then to work through the other addresses.”  Ibrahim’s counsel noted that Hoxie “became
convinced relatively soon that 3714 Wyoming [Street] was the correct address,”
and she subsequently served her there in March 2009.  Finally, Ibrahim’s counsel testified,

At all times between January
2007 and March 21, 2009, I either believed that I had a citation out to be
served at what I believed was a good address for Ms. Dixon or I was attempting
to get a good address for Ms. Dixon. There was also never a time that I
concluded that 3714 Wyoming was definitely Ms. Dixon’s correct address until
Ms. Hoxie made that conclusion in early 2008.

 

Ibrahim
contended that her evidence established that she had “tried diligently to
locate and serve” Dixon, who, she asserted, had been avoiding service.

Standard
of Review

To prevail
on a summary judgment motion, a movant has the burden of proving that she is
entitled to judgment as a matter of law and that there is no genuine issue of
material fact. Tex. R. Civ. P.
166a(c); Cathey v. Booth, 900 S.W.2d
339,  341 (Tex. 1995).  When a defendant moves for summary judgment, she
must either (1) disprove at least one essential element of the plaintiff’s
cause of action or (2) plead and conclusively establish each essential element
of her affirmative defense, thereby defeating the plaintiff’s cause of action.  Cathey,
900 S.W.2d at 341; Yazdchi v. Bank One,
Tex., N.A., 177 S.W.3d 399, 404 (Tex. App.—Houston [1st Dist.] 2005, pet.
denied).  When deciding whether there is
a disputed, material fact issue precluding summary judgment, evidence favorable
to the non-movant will be taken as true.  Nixon v.
Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex. 1985).  Every reasonable inference must be indulged in
favor of the non-movant and any doubts must be resolved in her favor.  Id.
at 549. 

Diligence in Service

In her sole
issue, Ibrahim argues that the trial court erred in granting Dixon’s summary-judgment
motion on the ground that limitations had expired because she presented
“competent summary judgment evidence that [she] used due diligence to locate
and effect service on [Dixon] and that [Dixon] was avoiding service.”  

          If a plaintiff files her petition
within the limitations period, but obtains service on the defendant outside of the
limitations period, such service is valid only if the plaintiff exercised “diligence”
in procuring service.  Ashley v. Hawkins, 293 S.W.3d 175, 179 (Tex.
2009); see also Proulx v. Wells, 235
S.W.3d 213, 215 (Tex. 2007) (explaining that “a timely filed suit will not
interrupt the running of limitations unless the plaintiff exercises due
diligence in the issuance and service of citation”).  If a plaintiff diligently effects service
after the expiration of the statute of limitations, the date of service relates
back to the date of filing.  Proulx, 235 S.W.3d at 215.  If a defendant affirmatively pleads the
defense of limitations and shows that service has occurred after the
limitations deadline, the burden shifts to the plaintiff to prove diligence.  Ashley,
293 S.W.3d at 179; Proulx, 235 S.W.3d
at 216.  The plaintiff then must present
evidence regarding the efforts made to serve the defendant and “explain every
lapse in effort or period of delay.”  Proulx, 235 S.W.3d at 216.  The issue is “whether the plaintiff acted as
an ordinarily prudent person would have acted under the same or similar
circumstances and was diligent up until the time the defendant was served.”  Ashley,
293 S.W.3d at 179 (citations omitted).  The
question of the plaintiff’s diligence in obtaining service is generally “one of
fact” to be “determined by examining the time it took to secure citation,
service, or both, and the type of effort or lack of effort the plaintiff expended
in procuring service.”  Proulx, 235 S.W.3d at 216.  However, a plaintiff’s explanation of its
efforts to obtain service may demonstrate a lack of diligence “as a matter of
law” when “one or more lapses between service efforts are unexplained or
patently unreasonable.”  Id. 

A plaintiff
must bring a suit for personal injuries within two years from the time the
cause of action accrued.  See Tex.
Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon Supp. 2010).  Here, the accident occurred on May 5, 2005,
and Ibrahim timely filed her petition on January 24, 2007.  However, Dixon established that she was not
served until March 21, 2009, which was approximately twenty-two months after
the expiration of the limitations period. 
Thus, the burden shifted to Ibrahim to explain her diligence in
procuring service on Dixon. 

The summary-judgment
record establishes multiple “lapse[s] in effort or period[s] of delay” by Ibrahim
in her efforts to serve Dixon.  See Proulx,
235 S.W.3d at 216.  It is undisputed that, in February
2007, a deputy had already reported that the 3719 Wyoming Street service
address was a “bad address” and, on March 2, 2007, the deputy returned the
citation to the court, noting that there was “no address from attorney to serve.”  Ibrahim’s
counsel testified that in May 2007, he retained a private investigator, who
prepared a report identifying Dixon’s residence address as 3714 Wyoming
Street, not 3719 Wyoming Street. 
Nevertheless, on May 23, 2007, Ibrahim’s
counsel requested a second citation and used the 3719 Wyoming Street
address.  The same deputy again attempted
to serve Dixon at that same address, but reported on June 4, 2007 that 3719 Wyoming
Street remained a “bad address” for Dixon. 
Although we recognize that the private investigator had also stated in
her report that 3719 Wyoming Street was one of Dixon’s seven previous
addresses, the evidence demonstrates that the investigator identified Ibrahim’s current address as 3714 Wyoming Street,
and this address was consistent with the police accident report.  

Even if Ibrahim’s counsel’s decision to request a second citation with the
same previously identified “bad address” could be found to be reasonable, Ibrahim’s counsel conceded that he did
not become aware that the second citation had been returned until September
2007, approximately three months after the deputy reported it, for the second
time, as a “bad address.”  Ibrahim’s counsel, in September 2007,
requested a citation using the 3714 Wyoming Street address, but he offered no
evidence of any efforts to serve this citation until he forwarded it,
approximately six months later, to the process server in February 2008.  Ibrahim’s counsel does not suggest that any
other deputies or process servers made efforts to serve the citation before it
was forwarded to the process server.  Ibrahim’s
counsel did, in his affidavit, generally testify that he had “continued
attempting to use online resources” to locate Dixon’s address, he believed that
“[a]t all times” he had an outstanding citation for what he “believed” to be “a
good address” or he “was attempting to get a good address,” and there was “never
a time” that he “definitely” concluded that 3714 Wyoming Street was a correct
address until his process server concluded this in “early 2008.”  But none of his testimony accounts for the
significant delays identified above and, most obviously, the lapse between
obtaining the September 2007 citation and forwarding it to Hoxie in February
2008.

          As noted above, in determining
diligence, we examine “the time it took to secure citation, service, or both,
and the type of effort or lack of effort the plaintiff expended in procuring
service.”  Proulx, 235 S.W.3d at 216; see
also Mauricio v. Castro, 287 S.W.3d 476, 479 (Tex. App.—Dallas 2009, no
pet.) (“Texas courts have consistently held that lack of diligence may be shown
based on unexplained lapses of time between the filing of the suit, issuance of
the citation, and service of process.”). 
We conclude that the record before us establishes, as a matter of law, that
Ibrahaim failed to exercise diligence in securing and serving the citation on
Dixon.  See Boyattia v. Hinojosa, 18 S.W.3d 729 (Tex. App.—Dallas 2000,
pet. denied) (holding that plaintiff’s failure to take any action during clerk’s
three-month delay in delivering citation constituted lack of diligence as
matter of law); Webster v. Thomas, 5
S.W.3d 287, 289–90 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding plaintiff
failed to use due diligence as matter of law, in part, because evidence showed that
during three month period from filing of petition to issuance of citation,
plaintiff called wrong clerk’s office when inquiring about issuance of
citation); Butler v. Ross, 836 S.W.2d
833, 836 (Tex. App.—Houston [1st Dist.] 1992, no writ) (holding five-and-one-half
months of no service efforts between failed attempts at wrong address and
proper service at correct address constituted lack of due diligence as matter
of law).  Accordingly, we hold that the
trial court did not err in granting summary judgment in favor of Dixon.

          Finally, we address Ibrahim’s
comparison of the facts present in the instant case with those considered by the
supreme court in Proulx, in which the
plaintiff utilized two process servers and two investigators in attempting to
locate a correct address and, over the course of nine months, made thirty
service attempts at five different addresses. Proulx, 235 S.W.3d at
217.  When one of the investigators
located three possible alternative addresses, the investigator made twelve
unsuccessful service attempts at the alternative addresses.  Id.
at 215.  An investigator stated that
throughout the nine months of service attempts, the defendant was “moving from
relative to relative and doing his best to avoid service from the courts and
creditors.”  Id.  The plaintiff, after nine
months of unsuccessful efforts and approximately eight months after the statute
of limitations expired, changed course and obtained substituted service on the
defendant.  Id. at 215.  

In
contrast, here, Ibrahim did not serve Dixon until twenty-two months after the
expiration of the statute of limitations. 
Ibrahim’s counsel’s private investigator, in May 2007, determined
Dixon’s residence address to be 3714 Wyoming Street.  Ibrahim’s counsel did not obtain the third
citation with the 3714 Wyoming Street address until September 2007.  Once he obtained the third citation, Ibrahim’s
counsel waited approximately six months to forward the citation to Hoxie.  Additionally, there is no evidence of efforts
for substituted service.  See Ashley,
293 S.W.3d at 179 (stating that if plaintiff was unable to locate defendant, or
if plaintiff thought defendant was evading service, “other methods of service
were available” and “[i]n particular, no substitute service such as service by
publication was attempted”).  The
evidence of Ibrahim’s counsel’s overall efforts in this case establishes lack
of diligence as a matter of law.[1]
 See
id. (stating that courts “must consider overall effort expended over the
gap in service, and whether the search ceased to be reasonable, especially when
other methods of service were available”). 

          We overrule Irbahim’s sole issue.

Conclusion

          We affirm the judgment of the trial
court.

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Higley, and Brown.











[1]               Ibrahim’s
allegation that Dixon was “avoiding service” is based upon Hoxie’s testimony
that Dixon evaded her service efforts during the thirteen month period between
February 2008 and March 2009.  Because we conclude that the
evidence established lack of diligence arising from lapses and periods prior to
Hoxie receiving the citation in February 2008, we need not directly address
whether Ibrahim, through the process server Hoxie, exercised diligence after
February 2008.